**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL MENDOZA,<br><br>             Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>             Defendant. | **Case No. 1:15-cv-777-GSA**<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.  INTRODUCTION**

Plaintiff, Paul Mendoza ("Plaintiff"), seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] Upon a review of the administrative record, the Court finds the ALJ's decision is not supported by substantial evidence and the case is remanded to the agency for further proceedings.

**II.  BACKGROUND AND PRIOR PROCEEDINGS**

Plaintiff filed applications for DIB and SSI on July 20, 2010, alleging a disability onset

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7, 8, and 20).

1

date of March 4, 2008. AR 186-196.[2] Plaintiff alleges he is unable to work because he suffers from valley fever and diabetes mellitus. His applications were denied on November 2, 2010, and on reconsideration on November 16, 2010. AR 123-126;128. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Heyer conducted a hearing on February 14, 2012. AR 68-89; 135. After the hearing, ALJ Heyer issued a decision finding Plaintiff was not disabled. AR 97-110. Plaintiff appealed that decision to the Appeals Council, and the Appeals Council remanded the case to the ALJ for further consideration. AR 116-119. In relevant part, the case was remanded for the ALJ to, "[o]btain additional evidence concerning the claimant's literacy in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 4014.1512-1513 and 416.912-913)."AR 117.

ALJ Heyer held a second hearing on September 4, 2013.[3] AR 44-67. On September 18, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. AR 13-23. Plaintiff timely appealed that decision. AR 7. The Appeals Council denied Plaintiff's appeal, rendering the order the final decision of the Commissioner. AR 1-3. Plaintiff now challenges that decision, arguing that: (1) the ALJ failed to articulate specific and legitimate reasons for not incorporating all of an examining physician's limitations into Plaintiff's Residual Functional Capacity ("RFC");[4] and (2) the ALJ failed to meet his burden establishing that Plaintiff was literate. (Doc.14, pgs. 7-14; Doc. 8, pgs. 3-8). In opposition, Defendant argues: (1) the ALJ's evaluation of the medical evidence was proper; and (2) the ALJ properly addressed Plaintiff's literacy. (Doc. 17, pgs. 6-13).

### III.   THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff appeared at the hearing in Bakersfield, California, and the ALJ presided over the proceedings from San Francisco, California. AR 13.

[4] As explained in more detail later in this order, a residual functional capacity captures what a claimant, "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945.

than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[5] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform his past relevant work,[6] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 23. Specifically, the ALJ found that Plaintiff met the insured status requirements through June 30, 2014, and had not

---

[5] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

[6] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

engaged in substantial gainful activity since March 4, 2008, the alleged onset date. AR 15. Further, the ALJ identified diabetes mellitus and valley fever as severe impairments. AR 15. Nevertheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 15-16.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a) and 416.967(a), except that Plaintiff must have the option to alternate between sitting and standing as needed, in up to thirty minute increments; that he can communicate in English; and is limited to simple repetitive tasks. AR 16. The ALJ determined Plaintiff could not perform his past relevant work. AR 20. However, based on this RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a surveillance system monitor (DOT 379.367-010); an addresser (DOT 209.587-010); and a stuffer (DOT 731.685-010). AR 22.

## IV.  STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

///

///

## V.   DISCUSSION

### A. The ALJ's Decision is Ambiguous With Regard to Dr. Bhangoo's Opinion.

At issue in this appeal, is whether the ALJ properly incorporated all of Plaintiff's limitations into the RFC. More specifically, Plaintiff was evaluated by Dr. Bhangoo, M.D., an examining physician, on September 18, 2008. AR 379-383. Dr. Bhangoo determined that Plaintiff could do sedentary work, but that he "may need an assistive device such as a wheelchair or cane to get around, based mainly on his weakness." AR 382. When evaluating the medical evidence, the ALJ specifically considered Dr. Bhangoo's opinion, and stated as follows:

> Consultative examining Sarupinder Bhangoo, M.D., opined that claimant can perform sedentary work, due to activity intolerance, and may possibly require an assistive device to get around, based on his subjective weakness. Dr. Bhangoo's opinion is based on [a] thorough in-person examination of the claimant, generally consistent with the record as a whole, including chronic valley fever, and more adequately considers the claimant's subjective symptoms. It is therefore afforded significant weight.
> AR 19 (citation omitted).

Plaintiff argues that although the ALJ gave Dr. Bhangoo's opinion significant weight, he did not incorporate the use of a cane into the RFC, nor did he provide specific and legitimate reasons for rejecting this limitation. Plaintiff contends this is significant because the need for an assistive device, combined with a limitation of sedentary exertion, effectively warrants a finding of disability. Plaintiff cites to the first administrative hearing, wherein the VE was asked to assume the limitation to sedentary exertion with a need for a sit/stand option in half-hour increments (AR 84) (the same limitations outlined in Plaintiff's current RFC), with the added limitation that a cane would be needed. The VE responded that an individual with these limitations would be off task because of an inability to use both hands for bimanual activities. AR 86. Thus, if the ALJ incorporated this limitation, Plaintiff would be entitled to benefits.

In opposition, the Commissioner contends that the ALJ's assessment of the medical evidence was proper because Dr. Bhangoo's opinion was that Plaintiff "may need an assistive device … to get around." AR 283. The Commissioner interprets this to mean that Plaintiff needed an assistive device when he was not working. (Doc. 17, pg. 8). Moreover, even if an

5

assistive device was needed, Plaintiff could perform sedentary jobs in a wheelchair which would free up his hands, thus rendering the use of a cane irrelevant. *Id*. Plaintiff counters that sedentary work still requires that Plaintiff stand/walk for up to two hours a day. SSR 83-10, 1983 WL 31251; SSR 96-7p, 1996 WL 374186.[7] Therefore, the required use of a cane or wheelchair would preclude sedentary work.

A review of the record reveals that the ALJ's decision is ambiguous. Specifically, the ALJ references Dr. Bhangoo's limitation of the use of a cane in the decision, however, in two other places in the order, the ALJ specifically noted that the medical records do not mention the need for an assistive device. AR 19 (ALJ noting most treatment notes do not mention the need for an assistive device and citing AR 404-445; 450; 464-533; 540-690; 742-960). Moreover, the RFC does not incorporate this limitation, suggesting that the ALJ implicitly rejected the limitation.

Plaintiff correctly notes that if the ALJ chooses to reject an examining physician's opinion, the ALJ must articulate specific and legitimate reasons based on substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *See also* Social Security Ruling 96-8p, 1996 WL 374184 (if the ALJ chooses to reject any opinion evidence in the record, the ALJ must provide an explanation in support of the rejection). In this instance, the ALJ did not do so. Plaintiff urges this Court to award benefits in light of this omission. However, given the ambiguity of the ALJ's order, as well as the fact that the ALJ did not address this limitation with the VE at the second hearing, the case will be remanded to further develop the record in this area.

On remand, the ALJ shall explore whether use of a cane, or another assistance device is required, and if so, under what circumstances the device would be used. If the ALJ rejects the limitation, he shall provide a specific and legitimate reason for doing so. If the use of an assistive device limitation is adopted (whether it be a cane or a wheelchair), the ALJ shall present any limitation in combination with Plaintiff's other impairments to the VE, to determine whether Plaintiff would be able to perform work at any exertional level.

///

///

---

[7] SSR 96-7 was superseded by SSR 16-3p on March 28, 2016, after the ALJ conducted the hearing in this case.

### B. The ALJ's Evaluation of Plaintiff's Literacy Is Not Supported by Substantial Evidence.

Plaintiff also contends that the ALJ improperly concluded that the Plaintiff was literate. (Doc. 14, pgs. 10-14; Doc. 18, pgs. 5-8). He argues this is relevant because if Plaintiff is illiterate, as of December 21, 2011,[8] he would be considered disabled under Medical Vocational Guideline Rule ("Grid") 201.17, which directs a finding of disability for individuals between the ages of 45–49 who are limited to sedentary work, have unskilled or no previous work history, and who are either illiterate or unable to communicate in English. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1), R. 201.17. Conversely, if Plaintiff is literate, he would meet all of the criteria of Grid 201.21 (20 C.F.R. Part 404, Subpt. P, App. 2, § 201.21), which requires a non-disability determination.

In support of this argument, Plaintiff contends that when assessing Plaintiff's literacy, the ALJ improperly focused the analysis on whether Plaintiff could communicate in English, rather than on whether Plaintiff could read. In particular, during the hearing, Plaintiff testified that he does not read well – that he could only read a little bit of a newspaper (AR 52), that he has a hard time reading a book at any level (AR 52),[9] and that he had taken special education classes in school. AR 52. Plaintiff also indicated that he does not own a computer or play video games. AR 49. When asked what his reading level was, the transcript of the proceedings indicates a lack of an audible response. AR 52. After this testimony, the ALJ stated that Plaintiff's "reading level is not an issue for me." AR 52.

Based on these answers, the ALJ posed questions to the VE indicating that Plaintiff could speak English, and limited Plaintiff to simple repetitive tasks, to address his reading ability. In assessing Plaintiff's literacy, the ALJ found as follows:

> Claimant testified he has adequate ability to communicate in English such that he did not require the services of a Spanish-English interpreter, and he is able to read a little bit of the newspaper.

---

[8] Plaintiff's birthday is December 21, 1966. AR 186.

[9] Plaintiff's counsel argues that Plaintiff indicated that he could not read, however, the question posed to Plaintiff was *if* he read, not whether he could read. AR 49.

. . . . .

> Regarding the claimant's alleged illiteracy, the undersigned notes that the claimant was able to communicate in English, and testified that he is able to read a little bit of the newspaper. The undersigned, therefore, does not consider the claimant illiterate, [sic] though provides the limitation to simple repetitive tasks in consideration of the claimant's limited reading and writing ability in combination with his physical symptoms, such as fatigue. AR 18-19.

Plaintiff argues this finding was in error because the ability to communicate in English pertains to the ability to speak and understand English. 20 C.F.R. §§ 404.1564(b)(5); 416.964(b)(5). Illiteracy, on the other hand, pertains to the ability to read and write English. 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1). In particular, illiteracy is defined as the inability to read or write a simple message such as instructions or inventory lists, even though the person can sign his or her name. 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1). Moreover, when assessing educational levels, the regulations require that the ability to speak, understand, read and write in English, be considered. 20 C.F.R. §§ 404.1564(b)(6); 416.964(b)(6).

Plaintiff contends that the ALJ's finding that Plaintiff was literate because he could communicate in English, and reads "a little bit of the newspaper," is erroneous based on these standards. Furthermore, Plaintiff argues that the Commissioner has already been given two opportunities to address this issue and has failed to meet its burden that Plaintiff is literate. Consequently, Plaintiff urges that the case should be remanded with benefits, or alternatively, remanded for the literacy issue to be further developed.

The Commissioner argues that a reasonable interpretation of the record supports the ALJ's decision because the literacy question centers around whether Plaintiff can read at all, not whether he can read well. (Doc. 17, pg. 9). Defendant contends that in this instance, the literacy question is settled because Plaintiff indicated that he could read (albeit it not well), and had taken special education classes. *Id.* Defendant further opines that the ALJ accounted for Plaintiff's limited reading abilities by limiting him to simple work. *Id.*

The Court is not persuaded by the Commissioner's argument. It is Commissioner's burden of establishing that the Plaintiff is literate, and it has not done so here. *Silviera v. Apfel*, 204 F.3d 1257, 1261 (9th Cir. 2000). The ALJ's reasoning that Plaintiff is literate because he

communicated at the hearing without an interpreter and that can read a newspaper "a little bit" (AR 52), does not establish, for example, that Plaintiff can read or write a simple message such as instructions or inventory lists. 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1). Accordingly, the ALJ's decision is not supported by substantial evidence, especially given the other evidence in the record, namely that Plaintiff indicated that he has a hard time reading a book at any level (AR 52), and that he had taken special education classes in school. AR 18-19, 52. The ALJ's attempt to determine what Plaintiff meant by "a little bit," is not clear since Plaintiff's answer regarding an assessment of his reading level was inaudible. AR 52. After this point, the ALJ discouraged further testimony in this area, stating, "[Plaintiff's] reading level is not an issue for me …." AR 52. Given this record, the extent to which Plaintiff can read and write is unclear.

The literacy issue is not only relevant to determine the applicability of the Grids, but is also relevant because the jobs identified by the VE require a reading level that may be higher than Plaintiff's capabilities given the evidence currently in the record. For example, a surveillance system monitor is classified as a Language Level 3, which requires that a person be able to read a variety of novels, magazines, atlases, and encyclopedias. DOT at 379.367-010, 1991 WL 673244. An addresser is classified as a Language Level 2, which requires a reading rate of 190-215 words per minute.[10] DOT 209.587-010, 1991 WL 671797. A stuffer which is classified as a Language Level 1, requires that the worker read at a rate of more than 95-120 words per minute. DOT at 731.685-014, 1991 WL 679811.[11]

Notwithstanding the above, Plaintiff appears to presume that someone who is illiterate may automatically be deemed disabled pursuant to the Grids, or they could never perform any of these jobs. However, Rule 202(i) of the Medical–Vocational Guidelines ("Grids"), 20 C.F.R. Pt. § 404, Subpt. P, App. 2, suggests otherwise:

> While illiteracy or the ability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work

---

[10] Level 2 reading also includes reading adventure stories and comic books, looking up unfamiliar words in the dictionary for meaning, spelling, and pronunciation, and reading instructions for assembling model cars and airplanes. *Id*.

[11] During the hearing, the vocational expert identified DOT code 731.685-010 for this position, however, it appears that the reference to this DOT number was incorrect because that DOT code classifies the occupation of a rooter number, while a stuffer is identified in code 731.685-014. *See*, DOT at 731.685-010, 1991 WL 679810.

9

relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance....

It may be that Plaintiff is literate as defined by the Grids, or is able to read enough to perform the jobs identified by the VE, but the record is far from clear. *Silviera v. Apfel*, 204 F.3d at 1262 (remanding when there is insufficient evidence in the record to determine whether or not the claimant was literate in English); *Rodriguez v. Astrue,* 2013 WL 458176 * 2 (C.D. Cal. Feb. 5, 2013) (remanding when Plaintiff stated she could read and write "a little" English); *Calderon v. Astrue*, 2009 WL 3790008, at *9 -10 (E.D. Cal. Nov.10, 2009) (burden not met where plaintiff testified, "I can read a little bit and I can write a little bit, not much"; court reasoned that "[a] vague response of '[a] little bit' in response to whether or not a claimant can read or write English is insufficient to establish that Plaintiff can read or write a simple message in the English language."). This is especially true since at the hearing, the VE never addressed the effect Plaintiff's literacy would have on his ability to perform the identified jobs. Accordingly, the case will be remanded to allow the ALJ to further develop the record to assess Plaintiff's literacy – not just his ability to communicate in English. On remand, the ALJ shall conduct any assessments he deems appropriate to determine the extent to which Plaintiff can read and write English. Any literacy limitations supported by substantial evidence shall be either applied to the Grids, or if appropriate, presented to the VE to address how Plaintiff's literacy levels, coupled with his other limitations, would impact any available jobs.

**VI.     REMAND FOR FURTHER ADMINSTRATIVE PROCEEDINGS**

Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin,* 759 F. 3d 995, 1020 (9th Cir. 2014). Conversely, a court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether it be the claimant's testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. at 1020. Even if all three of these criteria are met, the Court can retain

flexibility in determining an appropriate remedy. *Brown-Hunter v. Colvin*, 806 F. 3d 487, 495 (9th Cir. 2015).

Here, as discussed above, remand is appropriate as the ALJ's opinion is ambiguous regarding whether an assistive device is warranted, and the facts surrounding Plaintiff's literacy including his ability to read and write were not fully developed.  As such, this Court is unable to make a disability determination given these circumstances.  On remand, the ALJ shall re-evaluate the medical evidence and clearly indicate whether Plaintiff is required to use an assistive device, as well as assess Plaintiff's literacy, i.e., the extent that Plaintiff is able to read and write, consistent with the directions outlined in this order.

## VII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence in the record as a whole, and is not based on proper legal standards.  Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgement in favor of Plaintiff, Paul Mendoza, and against Carolyn W. Colvin, the Commissioner of Social Security.  The Clerk of the Court shall also close this action.

IT IS SO ORDERED.

Dated:   **October 27, 2016**          **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE